**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:21-cr-00121-NT |
| | ) | |
| SHAWN COOK | ) | |
| | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its counsel, Darcie N. McElwee, United States Attorney for the District of Maine, and Craig M. Wolff, Assistant United States Attorney, respectfully submits the following memorandum in aid of sentencing in this matter.

**INTRODUCTION**

In July 2018, Shawn Cook sent obscene, sexually explicit images to a vulnerable 15-year-old child, causing serious, long-term emotional damage to the child. He later attempted to obstruct justice by trying to persuade the child's mother to provide false exculpatory information to FBI agents investigating his conduct. He is now before the Court for sentencing after pleading guilty to transferring obscene matter to a minor and attempting to obstruct justice. For the reasons stated below, the government respectfully submits that a sentence at or near the low end of the advisory guidelines range is appropriate here.

## GOVERNMENT'S POSITION

Cook faces a statutory maximum sentence of 10 years imprisonment on each count. PSR ¶ 94. The Court may impose a supervised release term of up to three years. PSR ¶ 97. A fine of up to $250,000 may be imposed on each count, and a special assessment of $100 per count is mandatory. PSR ¶¶ 103, 104. Restitution is mandatory, but the victim has not requested restitution. PSR ¶¶ 107, 108.

## I.    Cook's Advisory Guidelines Are Properly Calculated

The revised PSR calculates Cook's offense level in the following way:

| | | |
|---|---|---|
| Base offense level | 10 | § 2G3.1(a) |
| Distribution to a minor | +5 | § 2G3.1(b)(1)(C) |
| Use of computer | +2 | § 2G3.1(b)(3) |
| Vulnerable victim | +2 | § 3A1.1(b)(1) |
| Obstruction of justice | +2 | § 3C1.1 |
| Acceptance of responsibility | -3 | § 3E1.1 |
| **Total Offense Level** | **18** | |

PSR ¶¶ 20–30. The government agrees that all of the guideline enhancements correctly apply. At Criminal History Category VI, his advisory guidelines range is 57–71 months. PSR ¶¶ 55, 95.

## II.    A Sentence at or Near the Low End of the Guidelines Is Appropriate

The government recommends a sentence at or near the low end of the advisory guidelines range, followed by three years of supervised release. The government

recognizes that there are reasonable arguments for a sentence below the guidelines, but submits that in light of Cook's offense conduct and history and characteristics, a sentence well below the guidelines would not fulfill the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a).

### A.    Cook Victimized a Vulnerable Child and Attempted to Obstruct Justice

Multiple aspects of Cook's offense conduct argue in favor of imposing a guideline sentence. He knew before engaging with the victim that he was sending obscene material to someone who was under 16 years old. Even worse, he knew that the victim was particularly vulnerable, as outlined in Paragraphs 8 and 23 of the Revised PSR. The Victim Impact Statement submitted by the victim's mother makes clear in wrenching detail that the victim has been significantly traumatized by Cook's conduct. Although there is no indication that Cook specifically intended such a result, his prior knowledge of the victim's vulnerabilities makes his conduct all the more reprehensible.

Cook's sentence should also be significantly enhanced because he attempted to obstruct justice. After learning that his girlfriend was being asked to testify before a federal grand jury regarding his actions, Cook called the victim's mother and told her the FBI had contacted his girlfriend. He told the victim's mother to "take care of it," and when she declined to do so, he asked her to "just tell them you lied." He also told her to tell the victim to "keep his mouth shut."

Cook's attempt to obstruct a federal grand jury investigation occurred almost three years after he had transferred obscene material to the victim. Although in the

3

government's view his clear acceptance of responsibility after being charged merits

both an obstruction enhancement under § 3C1.1 and credit for acceptance of

responsibility under § 3E1.1, his sentence must include a sanction for committing

independent criminal conduct in an attempt to thwart the investigation.[1]

### B.      Cook's Offense Was Part of an Egregious History of Criminal Conduct

At the time Cook committed his offenses in this case, he had already amassed

a remarkable criminal history, evidencing his consistent disregard for the law. In the

Guidelines Manual, the Sentencing Commission discusses the importance of an

individual's criminal history in fashioning an appropriate sentence:

> The Comprehensive Crime Control Act sets forth four purposes of
> sentencing. (See 18 U.S.C. § 3553(a)(2).) A defendant's record of past
> criminal conduct is directly relevant to those purposes. A defendant
> with a record of prior criminal behavior is more culpable than a first
> offender and thus deserving of greater punishment. General deterrence
> of criminal conduct dictates that a clear message be sent to society that
> repeated criminal behavior will aggravate the need for punishment with
> each recurrence. To protect the public from further crimes of the
> particular defendant, the likelihood of recidivism and future criminal
> behavior must be considered. Repeated criminal behavior is an
> indicator of a limited likelihood of successful rehabilitation.

U.S. Sentencing Commission, Guidelines Manual ch. 4, pt. A, intro. cmt. (Nov.

2021). Given the importance of criminal history in imposing a sentence that fulfills

the statutory purposes of sentencing, it is wholly appropriate, for example, that the

---

[1] The commentary to § 3E1.1 of the guidelines notes that conduct resulting in an enhancement under § 3C1.1 "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 apply." U.S.S.G. § 3E1.1 cmt. n.4. The government agrees that both adjustments should apply in this case.

advisory guidelines range for an individual with an offense level of 18 and Criminal History Category I is 27–33 months, while the range for an individual with the same offense level and Criminal History Category VI is 57–71 months.

When considered in light of his egregious criminal history, Cook's offense conduct calls for a much longer sentence than would be appropriate for an individual without such a history. The Revised PSR concludes that his criminal history score is 18, which puts him well within Criminal History Category VI. In addition to numerous theft convictions, he has also earned convictions for many other crimes including terrorizing (¶ 42), domestic violence assault (¶ 43) and burglary (¶ 53).

His disregard for the law is further highlighted by his abysmal compliance with court-ordered conditions of supervision. He violated probation conditions, sometime multiple times, in 12 of his criminal cases. PSR ¶¶ 32, 33, 34, 35, 36, 42, 45, 49, 50, 51, 52, 53. Indeed, he violated his probation in multiple cases by committing the offense conduct in this case in July 2018. PSR ¶¶ 51, 52, 53. He currently has three pending charges, and is still the subject of an active arrest warrant. PSR ¶¶ 66–68. His consistent refusal to obey the law increases the risk that he will commit crimes after he completes his sentence.

This consistent history of criminal behavior sets him apart from most federal offenders, and from essentially all other obscenity defendants. With respect to the former, in Fiscal Years 2018–2021, only 9% of all federal offenders were in Criminal History Category VI. *See* U.S. Sentencing Commission, *Interactive Data Analyzer*, https://ida.ussc.gov/analytics/saw.dll?Dashboard. As to the latter, during the same

four-year period, in the entire federal system there was *one* offender in Criminal History Category VI whose primary guideline was § 2G3.1. *Id.* The combination of Cook's offense conduct and his criminal history sets him apart from most other similar offenders and calls for a quite significant sentence.

### C.      Cook's Guideline Enhancement for Use of a Computer Does Not Yield an Unfair Sentence

In his sentencing memorandum, Cook attempts to equate the guideline applicable to his offense, § 2G3.1, with that applicable to child pornography offenses, § 2G2.2. He notes that virtually all offenders sentenced under § 2G3.1 receive the enhancement for use of a computer, § 2G3.1(b)(3). He equates this enhancement to a similar enhancement under the child pornography guideline and claims that it unfairly increases his guideline range. Def.'s Sent. Mem. at 10.

Cook's attempt to equate the obscenity and child pornography guidelines falls flat, however, given the overall sentences faced by obscenity offenders like himself. The base offense level for Cook's offense is a level 10, compared to a level 18 under the child pornography possession guideline. Absent the vulnerable victim and obstruction enhancements present in this case, Cook's final offense level with acceptance of responsibility would be a level 14. An offender in Criminal History Category I and offense level 14 would have an advisory guidelines range of 15–21 months. It is difficult to argue that such a sentence is inappropriately long for an individual who sends obscene material to a child. Cook's attempt to appropriate the argument often advanced in child pornography cases is just not persuasive here.

**D.      Cook Should Not Receive a Downward Variance for Appearing via Video**

Cook argues in his sentencing memorandum that his willingness to appear by video for proceedings in this case, including his sentencing, warrants a three-level downward variance. The government respectfully disagrees that such a variance is appropriate here.

While it is true that the government had a formal policy in place from August 12, 2020, to May 31, 2021, under which the government agreed to recommend a downward variance for defendants who agreed to proceed by video, that policy was implemented at the height of the COVID pandemic when the Court was not conducting in-person court proceedings. More importantly, the government's COVID policy required a defendant to do much more than just waive his or her right to be physically present for court proceedings. The recommended variance was not simply for agreeing to appear by video. The idea was to address the inevitable backlog that would flow from halting in-person proceedings, facilitate the appropriate disposition of cases, and avoid delaying proceedings until the normalization of court operations. The government's COVID plea agreement sought to move cases forward and obtain both finality and certainty by securing important concessions from defendants.

Notably, the COVID plea agreement included language that was not in the government's standard plea agreement. Perhaps most important, the COVID plea agreement required a defendant to admit to facts that established the elements of the charged offense, and it severely limited a defendant's ability to withdraw his or her guilty plea. Defendants who signed COVID plea agreements gave the government

7

some certainty with respect to charges that otherwise could have been delayed for many months until the Court began operating in person again. Without this incentive, and without a trial list to force a defendant to decide whether to plead guilty or go to trial, the government faced the prospect of dozens of defendants delaying the resolution of their cases and postponing the possibility of trials for an indefinite period (a period that ultimately turned out to be almost one year).

The government decided to end its practice of offering COVID plea agreements after the Court's decision on March 12, 2021, to normalize operations and to set a timeline for conducting in-person proceedings. *See* General Order 2021-04 (*available at* https://www.med.uscourts.gov/sites/med/files/GeneralOrder-2021-4.pdf). After the Court issued its General Order, the government decided to retire its COVID policy effective May 31, 2021. Notably, the government provided the defense bar with ample advance notice of the policy's impending expiration to permit defendants who were willing to resolve their cases early the opportunity to take advantage of the recommended variance. The expiration date for the government's COVID policy/plea agreement was also announced at the Criminal Law Committee meeting held on March 25, 2021—a meeting that was attended by the Federal Defender and representatives from the CJA Panel.

There are three important factual distinctions between Cook and those defendants who chose to enter into COVID plea agreements during the height of the pandemic. First, at the time the grand jury returned an indictment against Cook in July 2021, the government already had retired its COVID policy. As a result, the parties

were aware from the outset that a COVID plea agreement was not an option. Second, there is no written plea agreement in this case, meaning that Cook never agreed to the language in the government's standard plea agreement, much less the more expansive language in the government's COVID plea agreement. Third, if Cook wanted all prior proceedings to occur in person, he could have elected to do so. Similarly, if Cook wants to have an in-person sentencing hearing or if the Court determines that it is in the interests of justice for his upcoming sentencing to occur in person, the government is ready and willing to proceed in person.

In sum, the government disagrees that Cook is entitled to a three-level downward variance for his willingness to appear by video and requests that the Court not impose any downward variance on this basis.

## III.    The Government's Recommended Sentence Fulfills the Statutory Purposes of Sentencing

The government submits that its recommended sentence is also appropriate under 18 U.S.C. § 3553(a). In addition to the nature and circumstances of the offense, discussed above, the other statutory factors also support the imposition of this sentence.

### A.    Cook's History and Characteristics

With respect to Cook's history and characteristics, although he had a loving family life, he was severely bullied in school and sexually abused when a teenager. PSR ¶¶ 77–79. This trauma appears to have significantly affected him during adulthood. He also has a significant mental health history. PSR ¶ 84. He served in the U.S. Army Reserves from 1999 to 2004, but received a general discharge after being

absent without leave. PSR ¶ 88. His traumatic childhood experiences and mental health history, in the absence of other factors, arguably support a below-guideline sentence.

Cook also has a major substance abuse history, and there is no doubt that substance abuse has fueled his criminal conduct. The question for the Court is whether his drug use merits a substantial downward variance from the guidelines. The government submits that it does not.

Under the guidelines, drug or alcohol dependence is ordinarily not a reason for a downward departure. *See* U.S.S.G. § 5H1.4. Indeed, "[s]ubstance abuse is highly correlated to an increased propensity to commit crime." *Id.* Although consideration of Cook's substance abuse is not prohibited in the post-*Booker* world, it is not necessarily a mitigating circumstance. Indeed, the First Circuit and other courts of appeals have upheld sentences in which district courts treated drug use as an aggravating factor. See, e.g., *United States v. Ossai*, 485 F.3d 25, 34 (1st Cir. 2007) (upholding above-guideline sentence based on defendant's "history of prior arrests, substance abuse, and anti-social behavior"); *United States v. Poore*, 838 F. App'x 217, 218 (8th Cir. 2021) ("The weight the district court gave to Poore's extensive history of drug abuse, considering it as an aggravating factor rather than a mitigating factor, is within the district court's wide discretion."); *United States v. Capler*, 718 F. App'x 440, 442 (7th Cir. 2018) (noting that district court weighed appropriate factors at sentencing, including aggravating factor of recurring drug use). Given its role as a

catalyst for criminal activity, the government submits that Cook's substance abuse, if not an aggravating factor, is also not a mitigating factor.

### B.    Seriousness of Offense, Respect for the Law, Just Punishment

The Court also must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). These factors are related. As the court noted in *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008), "There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist." *Id.* at 957. In this case, Cook's offenses were quite serious. He traumatized a vulnerable victim by sending obscene material and then tried to obstruct the resulting investigation. A sentence at the low end of the guidelines will fulfill these purposes of sentencing.

### C.    General and Specific Deterrence

The Court also must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(B), (C). These two factors are sometimes said to reflect the needs for general and specific deterrence. *See, e.g.*, *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). With respect to the former, the government's recommended sentence will send the message that sending obscene material to a minor and attempting to obstruct justice are serious offenses that will be

11

punished appropriately. The message must also be sent that an individual with a lengthy history of criminal behavior will receive additional punishment in light of that history.

With respect to the latter, the government submits that Cook's criminal history demonstrates that he poses a high risk of re-offending. Protecting the public from further crimes by him therefore should be a significant consideration in imposing sentence in this case.

### D.   Training and Treatment

The Court must also consider the need for the sentence imposed to provide Cassidy with needed training or treatment. *See* 18 U.S.C. § 3553(a)(2)(D). The government's recommended sentence will provide him with the opportunity to obtain needed mental health, substance abuse and sex offender treatment, as recommended in the PSR.

### E.   Sentencing Disparities

Finally, the Court must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6). In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court concluded that when a sentencing judge correctly calculates and carefully reviews the Guidelines range, he or she necessarily gives significant weight and consideration to the need to avoid unwarranted disparities. *See id.* at 54. In this case, the government submits that its request for a sentence at or near the advisory guidelines range addresses this factor.

## CONCLUSION

For the reasons stated above, the government recommends that the Court impose a sentence at or near the low end of the advisory guidelines range followed by supervised release for three years.

Respectfully submitted,

DARCIE N. MCELWEE
UNITED STATES ATTORNEY

By:     /s/ Craig M. Wolff
Craig M. Wolff
Assistant United States Attorney

Dated: April 22, 2022

**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2022, I electronically filed the above

**Government's Sentencing Memorandum** with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to the following:

**Heather Gonzales
Assistant Federal Defender
heather_gonzales@fd.org**

DARCIE N. MCELWEE
UNITED STATES ATTORNEY

   /s/ Craig M. Wolff
Assistant United States Attorney
United States Attorney's Office
100 Middle Street
Portland, Maine 04101
(207) 780-3257
craig.wolff@usdoj.gov

14